EATON v. STATE OF INDIANA.

[No. 23,145. Filed March 7, 1917.]

1. CRIMINAL LAW.—*Admission of Irrelevant Evidence.*—*Cure of Error by Subsequent Testimony.*—Error in permitting the introduction of evidence irrelevant at the time of admission is not available if such evidence is rendered relevant by evidence subsequently introduced. p. 169.

2. CRIMINAL LAW.—*Reception of Evidence.*—*Discretion of Court.*—*Striking Out Irrelevant Evidence.*—*Exception.*—Where evidence is offered which is not at the time relevant, it is within the discretion of the trial court to admit it on the condition that it be rendered relevant by other evidence to be introduced subsequently, and, if such other evidence is not produced, the remedy is a motion to strike the irrelevant testimony from the record and to withdraw it from the consideration of the jury, and, to present for review the court's ruling on such motion, an exception thereto should be reserved and the ruling brought into the record by assigning it as a ground for a new trial. p. 169.

3. CRIMINAL LAW.—*Appeal.*—*Weighing Evidence.*—*Sufficiency.*—The court on appeal will not weigh the evidence, and in determining its sufficiency to sustain a conviction will only consider such evidence as tends to support the verdict. p. 169.

4 CRIMINAL LAW.—*Appeal.*—*Evidence.*—*Sufficiency.*—On an appeal from a conviction, where there is no evidence to support a material fact necessary to sustain the verdict, the judgment will be set aside. p. 169.

5. INTOXICATING LIQUORS.—*Illegal Sale.*—*Evidence.*—*Sufficiency.*—*Statute.*—On a prosecution, based on §8351 Burns 1914, Acts 1907 p. 689, for keeping, running and operating a place where intoxicating liquors were kept, sold, bartered and given away in violation of law, evidence showing that there was the accused custodian of a lodge room wherein, on the occasion in question, intoxicating liquors were served members of a club connected with the order, but that the liquors were purchased by a committee, of which defendant was not a member, with funds contributed by those participating, and that such liquors were in the custody and under the control of the committee and not of the accused, is insufficient to sustain a judgment of conviction. (*Givens* v. *State* [1914], 182 Ind. 561; *Dressel* v. *State* [1910], 174 Ind. 752; and *Kinsley* v. *State* [1915], 184 Ind. 396, distinguished.) pp. 170, 172.

6. INTOXICATING LIQUORS.—*Illegal Sale.*—*Elements of Offense.*—

*Evidence.—Statute.*—Section 8345 Burns 1914, Acts 1907 p. 27, 30, making the keeping of intoxicating liquors in any room or building *prima facie* evidence that they were kept for sale, does not apply in a prosecution based on §8351 Burns 1914, Acts 1907 p. 689, for keeping, running and operating a place where intoxicating liquors were kept, sold, bartered and given away in violation of law, where there is no evidence that the accused had the custody, control or possession of such liquors and that he had them in a room, building or other place. p. 172.

From Gibson Circuit Court; *John K. Chappel*, Special Judge.

Prosecution by the State of Indiana against John H. Eaton. From a judgment of conviction, the defendant appeals. *Reversed.*

*Hovey C. Kirk* and *Morton C. Embree*, for appellant.
*Evan B. Stotsenburg*, Attorney-General, and *Wilbur T. Gruber*, for the State.

MYERS, J.—Appellant was charged by affidavit with keeping a place where intoxicating liquors were sold in violation of law, and with having the liquors in his possession for such purpose. The charge was presented under §1 of the act of March 16, 1907, commonly called the "Blind Tiger" law (Acts 1907 p. 689, §8351 Burns 1914). A jury returned a verdict finding appellant guilty, as charged in the affidavit, of keeping, running and operating a place where intoxicating liquors were sold, bartered and given away in violation of the laws of the State of Indiana, and assessed his fine, etc.

Appellant, to sustain his appeal, relies entirely upon the alleged error of the trial court in overruling his motion for a new trial. In support of this motion he insists: (1) That the verdict of the jury is contrary to law; (2) that the verdict of the jury is not sustained by sufficient evidence; (3) that the court erred in admitting in evidence certain of the State's exhibits.

As to the third reason assigned in the motion for a

new trial, it appears that the evidence introduced, and
of which appellant complains, was not at that
1. time relevant, but if, by the introduction of other
evidence later it did become relevant, the error,
if any, would not be available. While we cannot
2. commend this practice, yet it is a question largely
within the discretion of the trial court, and ap-
pellant's remedy, in case the exhibits introduced were
not made competent by other evidence, was to move the
court to strike them from the record and to withdraw
them from the jury. Had the court overruled the mo-
tion, an exception should have been reserved, and this
ruling brought into the record by assigning it as a
reason for a new trial. *Heilman* v. *Shanklin* (1878),
60 Ind. 424, 450; *Tinkle* v. *Wallace* (1906), 167 Ind. 382,
390, 79 N. E. 355; *Ross* v. *State* (1907), 169 Ind. 388,
82 N. E. 781; *Burns* v. *Harris* (1879), 66 Ind. 536; *Zook*
v. *Simonson* (1880), 72 Ind. 83, 87. This was not done,
and therefore no reversible error in this respect is
pointed out.

That portion of §8351, *supra,* applicable to the ques-
tions presented reads as follows: "And any person who
shall keep, run or operate a place where intoxicating
liquors are sold, bartered or given away in violation of
the laws of the state, or any person who shall be
found in possession of such liquors for such purpose
shall be deemed guilty of a misdemeanor  *  *  *".

This court has often affirmed that it will not weigh
the evidence in a case upon appeal, but will, when the
evidence to support the verdict is challenged, con-
3. sider such evidence only as tends to support the
conclusion of the jury. *Wilson* v. *State* (1910),
175 Ind. 458, 477, 93 N. E. 609; *Applegate* v. *State*
(1914), 182 Ind. 266, 106 N. E. 370. But there
4. is another rule equally as well settled, holding
that where there is no evidence to support a ma-

terial fact necessary to support the verdict, this court will set aside a judgment based upon such verdict. *Wright* v. *Bertiaux* (1903), 161 Ind. 124, 129, 66 N. E. 900, and authorities cited; *Gillett* v. *Citizens Nat. Bank* (1914), 56 Ind. App. 694, 702, 104 N. E. 775; *Mesker* v. *Bishop* (1914), 56 Ind. App. 455, 471, 103 N. E. 492, 105 N. E. 644. It must also be kept in mind that the statute (§8345 Burns 1914, Acts 1907 p. 27, 30, §9) makes the keeping of intoxicating liquors in any room or building, or in any other place, *prima facie* evidence that such liquors are kept for sale, barter, or to be given away, except in specific cases mentioned by the statute.

The undisputed evidence shows that on April 25, 1916, and for years prior thereto, a lodge of Moose occupied the third floor of a certain building in the city of Princeton, Indiana. In connection with the order is a Moose Club, composed of members of the order; that it was the custom of the members of the order or club to hold, at times to be selected by them, what were known as social sessions, upon which occasions soft drinks, beer, eatables and cigars were served. These sessions were under the charge and direction of a committee selected or appointed by the membership present at a prior meeting. The personnel of this committee thus selected changed with each social session, and it had full charge of all arrangements and all purchases, including what was served at the banquet of which the particular committee had supervision. At no time was appellant on any one of these committees, nor did he have charge, or control, of the purchases made for these social sessions. The fund or money out of which the expenses of these banquets and social sessions were paid was contributed or donated by voluntary contributions of the members participating, and not one cent on that account was

taken from the exchequer of the lodge or club. At the time the lodge had 125 members, and the beer was ordered from the Cook Brewing Company, of Evansville, by one of the members of the committee, and the money to pay for it was sent by the committee to the company in Evansville. There is no evidence that beer was ever purchased by the lodge or the club, nor that either ever authorized others to do so on its account; nor is there any evidence that beer or other intoxicants were allowed or kept in or about the lodge premises except at the time and for the purpose of the sessions aforesaid. As to whether appellant had charge of the lodge property, or occupied the position known as custodian, the evidence is sufficiently conflicting to be a proper question for the jury, but, conceding that he did have charge of the property and the quarters occupied by the lodge, yet there is no evidence that he was the custodian of, or served any of the beer, that being the only intoxicating drink served, or that he gave any orders, or bought any beer to be delivered to him at the lodge apartments. It appears that on the evening of either April 25 or 26 a social session was to be held. On April 25 the beer found in the Moose quarters was delivered by a drayman of Princeton on the sidewalk in front of the door of the stairway leading to the lodge quarters. Appellant in passing saw the barrels containing the bottles of beer and set them on the inside of the door, just as other members had done on other occasions, which act was all the connection he had with the barrels or bottles, and he was not about the rooms on that day until after the raid was made and the constable who made it was preparing to leave the premises with the beer. There is evidence to the effect that in one room under the control of the lodge a few empty beer bottles were found, also an ice box, in which were ice, bottles of beer and soft drinks such as pop, coca

cola and Cooksola.   These soft drinks were kept and
sold by the Moose Club.

Appellant was convicted of keeping, running and
operating a place where intoxicating liquors were kept,
sold, bartered and given away.   The facts shown
6.   and not shown, as here recited, are not contro-
verted by the State, but it relies largely upon
the effect which it claims should be given to the statute
(§8345, *supra*) making the keeping of intoxicating liq-
uors *prima facie* evidence that such liquors are kept
for sale, etc.   But there must be: First, some evidence
that the accused had the custody, control or possession
of such liquors; secondly, that he kept them in a room
or building or other place, before the statute applies to
make a *prima facie* case that such liquors were kept for
sale or to be given away.   Without some evidence tend-
ing to prove these first two propositions there is no
basis for the statutory *prima facie* case.   In this case
there is no evidence that appellant kept, ran or operated
a place where intoxicating liquors were sold, bartered
or given away, as found by the jury.

The case at bar is readily distinguishable from *Givens
v. State* (1914), 182 Ind. 561, 107 N. E. 78; *Dressel v.
State* (1910), 174 Ind. 752, 93 N. E. 211, and
5.   *Kinsley* v. *State* (1915), 184 Ind. 396, 111 N. E.
418.   For, in the Givens case it appears from the
opinion that a well-regulated bar was maintained, and
Givens and three members of the house committee car-
ried the only keys to the buffet.   The beer was pur-
chased by the house committee with lodge funds, and
was disposed of by selling tickets or coupons to lodge
members only, with which they paid for definite quanti-
ties of beer delivered by appellant, when present, over
the counter to coupon-holding members who deposited
coupons therefor according to a fixed schedule of
prices, in a receptacle maintained by the lodge for that

purpose.   It was held that under the facts in that case the method in use constituted a sale of the beer to the members by the club and within the prohibition of the statute.   In the Dressel case it was shown that a wholesaler in a dry county maintained a regular bar upstairs where intoxicating liquor was drunk and delivered in small quantities to consumers.   The Kinsley case was one where a certain lodge held a retail liquor license issued by the government and paid a tax as a retailer of intoxicating liquors; Kinsley had control and management of the lodgerooms during the time in question; the beer was on tap in a room controlled by him; and a large number of empty beer kegs were found on the premises.

We are convinced that the State failed to make a case against this appellant, Eaton, and that his appeal should be sustained.   Judgment reversed, with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 115 N. E. 329.   Statute making possession of liquor *prima facie* evidence of illegal intent to violate it, validity, 43 Am. St. 26.   See under (2) 12 Cyc 556; (3, 4) 12 Cyc 907.